## CHAGNARD v. SCHIRO.
### No. 16186.

Court of Appeal of Louisiana.   Orleans.
March 9, 1936.

Jos. A. Casey, of New Orleans, for appellant.

S. Roccaforte and Neil A. Armstrong, Jr., both of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff, a lessor, seeks to recover from defendant, lessee, rent for the remainder of the term of a written lease, alleging that, because of defendant's failure to pay one of the rent notes at its maturity, the notes for the unexpired portion of the term of the lease were automatically matured by reason of a provision contained in the lease contract.

There is also a claim for the loss which is alleged to have resulted from damage to furniture and fixtures, which damage is claimed to have been caused by carelessness of the lessee. Defendant admits the execution of the lease and the signing of the rent notes, but he denies that the notes sued on ever matured, alleging that he vacated the premises for just cause, and that at the time there was nothing due, since the monthly rental had always been paid in advance. He denies any liability for damage to furniture and fixtures, and, averring that he gave to plaintiff, the lessor, proper written notice of his intention to vacate, he seeks by reconventional demand the dissolution of the lease on the ground that there were inherent defects in the building which rendered it dangerous to himself and to his wife, and he maintains that the said building was constructed in violation of certain provisions of the ordinance of the city of New Orleans known as the Building Code.

When the case was first tried in the court below, there was judgment in favor of plaintiff for the amount of the rent alleged to be due. The claim for damages was rejected, and the reconventional demand was dismissed as in case of nonsuit, the judge a quo being of the opinion that the allegations on which the demand was based were not sufficiently specific to permit of the introduction of evidence in support thereof. On appeal to this court, we held that the reconventional demand should have been considered, and we reversed the judgment in favor of plaintiff and remanded the entire matter, so that the evidence touching on the reconventional demand might be adduced and considered. See Chagnard v. Schiro (La.App.) 156 So. 58. The matter was again tried below and judgment was rendered in favor of defendant, dismissing plaintiff's suit, and in favor of defendant, plaintiff in reconvention, ordering the cancellation of the lease. From this judgment, plaintiff has appealed.

As we have stated, defendant admits that he executed the lease and that he signed the notes and that he vacated the premises prior to the expiration of the lease, so that on this feature of the case the only question involved is whether or not there was legal justification for the abandonment. If there was, then the judgment canceling the lease and releasing defendant from the obligation of paying the unmatured notes is correct; otherwise it is incorrect.

The contention of defendant on this point is that at the time he leased the apartment he did not appreciate the danger in which he and his wife would be placed, if a fire should occur, because of the fact that the said apartment had only one exit and that he did not know that the Building Code of the city of New Orleans required that buildings of that type be so constructed as to afford at least two avenues of escape in case of fire, and that, as soon as he discovered that the said code contained such a provision and realized the extreme danger to himself and to his wife, he gave to plaintiff written notice of his intention to vacate the premises unless the said deficiencies and defects were immediately supplied and remedied.

Plaintiff contends, in the first place, that the said Building Code contains no such requirement which is applicable to the building in question, and, in the second place, that the fact that there was only one exit from the said apartment resulted from the demand of the defendant himself that the other exit be closed by building material so that he and his wife might be shielded from the noises which emanated from other apartments in the building.

The contention that the partition which eliminated the other exit was erected at the request of the defendant is not sustained by proof, and we are convinced, as our broth-

er below seems to have been convinced, that defendant knew nothing about the fact that the other exit had been closed until some time after the commencement of the term of the lease.

We next consider the question of whether the building with which we are concerned is within the contemplation of section 67 of the Building Code, which, at page 101, provides: "That every building except private dwellings and each floor above the first shall have at least two (2) means of egress remote from each other."

█ Plaintiff maintains that the building involved here was and is a private dwelling, and that, therefore, it is within the exception which appears in the above-quoted section of the ordinance and need not have more than one exit, or, as it is expressed in the ordinance, "means of egress." The argument seems to be that, because the building contains only living apartments and no commercial establishments, it should be considered as a "private dwelling." But the record shows that it contains five apartments. If such a building can be considered as a private dwelling, it would indeed be difficult to determine just where the line should be drawn and just how many apartments would be required to convert a private dwelling into an apartment building. It is well known that under zoning and other ordinances private dwellings and apartment buildings of this character are differently classified. We feel that such difference in classification should most reasonably be applied here. Counsel in his brief says that "a multiple dwelling may also be a private dwelling." We do not think so. The word "multiple" implies the very opposite of private. We conclude that the building was not a private dwelling, and that, under the Building Code, it should have had at least two exits. Since it was constructed in violation of the laws designed to assure safety to occupants of such buildings, obviously defendant and his wife could not be required to continue as occupants after their discovery of the fact that the law prohibited such method of construction, unless, of course, plaintiff had been willing to immediately supply the deficiency, which he was unwilling to do.

█ Nor is it of importance that defendant did not immediately vacate the premises upon discovery of the defect. His right to abrogate the lease was not lost by delay in that respect. He gave notice to the landlord, he waited a reasonable time, the defect was not remedied. He was justified in leaving.

The evidence is not sufficient to warrant a holding that the damage to plaintiff's furniture and fixtures was caused by defendant, or, in fact that there was any such damage.

The judgment appealed from is affirmed. Affirmed.